**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Cody M. Weston**, OSB No. 984290
CWeston@perkinscoie.com
**Nathan R. Morales**, OSB No. 145763
NMorales@perkinscoie.com
**PERKINS COIE LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

*Attorneys for Defendant*
Corporation of the President of The Church of Jesus
Christ of Latter-day Saints

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **KRISTINE JOHNSON, JOHN DOE C., JOHN DOE J., JANE DOE K., and JOHN DOE S.**,<br><br>Plaintiffs,<br><br>v.<br><br>**CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS**, a Utah corporation,<br><br>Defendant. | Case No. 6:20-cv-00190-MC<br><br>**DEFENDANT'S MOTION TO DISMISS** |

DEFENDANT'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

147109681.2

## TABLE OF CONTENTS

**Page**

MOTION.......................................................................................................................... 1

LR 7-1 CERTIFICATION ............................................................................................... 1

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................... 3

III.    ARGUMENT ......................................................................................................... 4

      A.      Plaintiffs' claims are barred because Oregon law grants immunity for
           good-faith reports of child abuse .............................................................. 4

      B.      Plaintiffs' claims are barred because claims for breach of confidentiality
           can only be brought by the person to whom the duty of confidentiality was
           owed........................................................................................................... 5

      C.      Plaintiffs' claims are barred because a church cannot be held liable for
           violating religious duties.......................................................................... 6

      D.      Plaintiffs' Complaint fails to plead any valid claims.......................... 10

           1.      Plaintiffs fail to state a claim for intentional interference with
                 prospective economic advantage ............................................. 10

           2.      Plaintiffs fail to state a claim for breach of fiduciary duty .................... 11

           3.      Plaintiffs fail to plead a viable negligence claim .................................... 13

IV.     CONCLUSION.................................................................................................... 15

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## MOTION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Corporation of the President of The Church of Jesus Christ of Latter-day Saints ("the Church") moves for dismissal with prejudice of all Plaintiffs' claims.

## LR 7-1 CERTIFICATION

Pursuant to LR 7-1(a)(1), the parties have made a good faith effort to resolve this dispute and have been unable to do so.

## I.    INTRODUCTION

Lawsuits alleging that colleges, churches, the Boy Scouts, and other organizations have covered up sexual abuse often make headlines.  But in a strange twist, Plaintiffs in this case are suing the Church for *not* covering up sexual abuse.  The Church had a duty to stay silent, Plaintiffs contend, and should now be made to pay the millions of dollars that the perpetrator would have earned if he had not been caught and imprisoned.

Timothy Johnson admitted to Church clergy that he sexually abused his daughter.  He believed the Church's doctrines required Church clergy to keep his confession confidential.  Contrary to that belief, a report was made to authorities, and Mr. Johnson was arrested, convicted, and sent to prison for multiple years.  Mr. Johnson's wife and children are now suing the Church claiming that its disclosure of Mr. Johnson's confession—in violation of *his* expectation of confidentiality—led to a criminal investigation, which ultimately resulted in Mr. Johnson's incarceration and deprived his family of its breadwinner.

Their claims fail for several reasons.  First, Oregon law grants immunity from civil and criminal penalties to anyone who makes or participates in a "good-faith" report of child sexual abuse.  Or. Rev. Stat. § 419B.025.  There are no exceptions or limitations.  In this case, there is no question the report was made in good faith—*i.e.*, with a belief that the abuse actually occurred.

1-    DEFENDANT'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

147109681.2

Second, under Oregon law, a claim for breach of confidentiality can only be brought by the person to whom the duty was owed, not third parties. Thus, *Mr. Johnson's family* cannot sue for breach of a duty that the Church allegedly owed to *Mr. Johnson*.

Third, any duty the Church may have owed to Mr. Johnson was a religious duty based on Church doctrines and teachings. Even assuming Plaintiffs are right about the Church's confidentiality doctrines, the Church had no *legally enforceable* duty to abide by those doctrines. Unlike lawyers, therapists, physicians, and other licensed professionals, clergy are not licensed by the state and are not subject to secular rules of professional ethics. The state cannot suspend, disbar, or defrock a cleric for violating the rules of his own faith community. Such "clergy malpractice" claims have been universally rejected by courts. In fact, several courts have rejected claims just like Plaintiffs', and none has allowed such a claim. Further, the First Amendment prohibits courts from adjudicating claims based on the violation of Church doctrine.

Finally, it is undisputed that Mr. Johnson sexually abused his daughter. No court has, and no court ever should, permit a lawsuit seeking damages for the income a criminal would have earned if he had escaped punishment for his crimes. Such a claim would be contrary to Oregon public policy. Yet that is exactly what Plaintiffs are asking for: the $5,500,000 Mr. Johnson would have earned from his successful career as a sculptor, the $40,000 he incurred in criminal defense costs, and the financial support he would have provided to his children had he not gone to prison for sexually abusing his daughter. *It is undisputed that he committed the crime*. Although the Church's report might have led to an investigation, Mr. Johnson's crimes are the sole proximate cause of his incarceration and resulting loss of income. "He would have gotten away with sexual abuse!" cannot possibly be the basis for liability under any reasonable application of the law.

2-    DEFENDANT'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## II.    FACTUAL AND PROCEDURAL BACKGROUND

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) (quotation marks omitted).  Thus, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id*. (quotation marks omitted).  Accordingly, the following facts are taken from Plaintiffs' complaint and, for purposes of this motion, are assumed to be true.

1.    Timothy Johnson sexually abused his minor daughter.  Compl. ¶¶ 16, 18.

2.    Mr. Johnson confessed his sins to a council of Church clergy.  *Id*. ¶ 18.

3.    The Church, through one of its clergy, reported Mr. Johnson's confession to state authorities.  *Id*. ¶ 20.  For purposes of this motion, the Church does not dispute that the reporter was acting as clergy.

4.    After investigating, the state charged Mr. Johnson with felony child abuse. He confessed and was convicted and sentenced to multiple years in prison.  *Id*.

5.    His wife, three sons, and a daughter, are now suing the Church.  They allege that "Church doctrine required all clergy members … to maintain strict confidence of such confessions" and to "spiritually counsel Mr. Johnson to bring peace within his life and family." *Id*. ¶ 17.

6.    The Church allegedly violated its doctrine by reporting Mr. Johnson's confession, which led to Mr. Johnson's incarceration, "thereby depriving his wife and children of his companionship, society, love, affection and pecuniary interest."  *Id*. ¶¶ 20, 24.

7.    Plaintiffs allege pecuniary loss in the amount of $5,500,000, which is the income Mr. Johnson "would have reasonably expected due to his successful career as a sculptor" if he had not been incarcerated.  *Id*. ¶ 24(a).

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

8. Ms. Johnson sues for the $40,000 she paid for Mr. Johnson's criminal defense, which she would not have incurred if her husband had avoided detection. *Id*. ¶ 24(b).

9. Plaintiffs seek an additional $4,000,000 for loss of consortium and extreme emotional distress—not caused by the sexual abuse, but by their husband and father getting caught, found guilty, and sentenced to prison. *Id*. ¶ 24(c).

## III.    ARGUMENT

**A.    Plaintiffs' claims are barred because Oregon law grants immunity for good-faith reports of child abuse.**

Allowing persons or institutions to be held liable for reporting child sexual abuse would discourage such reports. Recognizing that, Oregon law grants civil and criminal immunity to anyone who reports child abuse in good faith.

> Anyone participating in good faith in the making of a report of child abuse and who has reasonable grounds for the making thereof shall have immunity from any liability, civil or criminal, that might otherwise be incurred with respect to the making or content of such report. Any such participant shall have the same immunity with respect to participating in any judicial proceeding resulting from such report.

Or. Rev. Stat. § 419B.025.

Although the phrase "good faith" has not been defined in the context of Or. Rev. Stat. § 419B.025, it has been defined in the context of various "whistleblower" statutes involving similar reporting issues. For example, in *Hall v. State*, 366 P.3d 345 (Or. App. 2015), the Oregon Court of Appeals interpreted "good faith" to mean a *subjective* good-faith belief that the misconduct occurred and "relates to what the [reporter] knew at the time of the report, not to what might be shown later to be reasonable with the benefit of hindsight." *Id*. at 350. The "reasonable grounds" provision is an objective analysis—whether a reasonable person would have believed there were grounds for making such a report. *See Emon Enterprises, LLC v. Kilcup*, 395 P.3d 78, 80 (Or. App. 2017) (noting that the text of a statute used the term

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

"'reasonable person,' a phrase that is consistently used to describe an objective test"). Thus, there is no liability when the reporter subjectively believes abuse has occurred and that belief is objectively reasonable.

In this case, Mr. Johnson confessed to sexually abusing his daughter. *See* Compl. ¶ 18. There is no question the report was made with a subjective and objectively reasonable belief that the abuse had occurred.

Plaintiffs may contend that the report was not made in "good faith" because it was the result of a tortious breach of duty. But it's an *immunity* statute. It presumes that a crime or tort has occurred, and immunizes the reporter from criminal and civil penalties. If "good faith" meant that the reporter did not commit a tort or crime in making the report, the statute would be meaningless. For example, in *Nielson v. Legacy Health Sys.*, 230 F. Supp. 2d 1206 (D. Or. 2001), a father brought tort claims for negligence, intentional infliction of emotional distress, assault, and intimidation in connection with reports of abuse. In dismissing those claims, the court said that Oregon's good-faith immunity prevented such tort claims—whether meritorious or not—because the plaintiff had "fail[ed] to assert any facts that demonstrate defendants made any report in bad faith, or that they lacked reasonable grounds for making the [report]." *Id*. at 1214. Likewise, here, Plaintiffs' claims turn on an allegedly improper report of undisputed child abuse. Oregon's statutory immunity for good-faith reports bars all these claims. And Plaintiffs have not alleged any facts in the Complaint establishing that the Church made the report in bad faith or lacked reasonable grounds for reporting Mr. Johnson's admitted sexual abuse. Therefore, this Court should dismiss Plaintiffs' claims.

**B.      Plaintiffs' claims are barred because claims for breach of confidentiality can only be brought by the person to whom the duty of confidentiality was owed.**

Oregon courts have recognized that certain professionals—physicians, for example—can be sued for violating a duty of confidentiality where that duty is contractual or where the

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

defendant is "bound to confidentiality by … professional standards." *Humphers v. First Interstate Bank of Or.*, 696 P.2d 527, 528-29 (Or. 1985). As discussed below, no such duty exists in this case. But even if it did, such "disclosure is not actionable in the absence of a duty of confidentiality or non-disclosure owed to the person who seeks to make the claim." *Doe v. Portland Health Centers, Inc.*, 782 P.2d 446, 448 (Or. App. 1989). That is why, in *Portland Health Centers*, the Oregon Court of Appeals rejected a claim brought by a mother for her own damages after information about her daughter was released by the defendant hospital, because the defendant's duty "was owed to the patient only and did not extend to plaintiff." *Id.*

Similarly, here, all of Plaintiffs' claims turn on an alleged breach of the Church's or its clergyman's duty of confidentiality *to Mr. Johnson*. But third parties—like Mr. Johnson's family—cannot sue for the alleged breach of a duty of confidentiality owed to their perpetrator husband/father.

C.    **Plaintiffs' claims are barred because a church cannot be held liable for violating religious duties.**

In cases where courts have allowed plaintiffs to pursue breach-of-confidentiality claims, the defendant's duty was found in secular and generally applicable sources. Those same types of claims, however, are "unavailable against a defendant not bound to confidentiality by such professional standards." *Humphers*, 696 P.2d at 529.

Clergy are not subject to such secular professional standards. They are not licensed by the state. There are no quasi-governmental bodies, like the state bar, that adopt professional standards or rules of ethics for all clergy. Instead, their duties are defined by the doctrines and teachings of their faith.

Thus, "courts throughout the United States have uniformly rejected claims for clergy malpractice under the First Amendment." *Franco v. The Church of Jesus Christ of Latter-day Saints*, 21 P.3d 198, 204 (Utah 2001); *see also Dausch v. Rykse,* 52 F.3d 1425, 1432 n. 4 (7th

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Cir. 1994) (Coffey, J., concurring) (citing state court cases holding clergy malpractice claims are constitutionally prohibited).[1]  Scripture and religious belief, not secular standards of care, define the obligations of a cleric to his or her flock.  These are religious and moral duties, not legally enforceable secular duties.  Judicial attempts to define or interpret religious duties and establish standards of care governing clergy—either for a particular denomination (what would a reasonable Catholic priest do according to the doctrines of the Catholic Church?) or for clergy in general—would violate both the Establishment Clause and the Free Exercise Clause of the United States Constitution.  Specifically, it would "interfere[ ] with the internal governance of the church, depriving the church of control over the selection [and regulation] of those [ministerial servants] who will personify its beliefs." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 706 (2012).  Moreover, it would impermissibly entangle courts in interpreting religious doctrine. *See Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 450-52 (1969) (civil courts cannot "engage in the forbidden process of interpreting and weighing church doctrine," such process "can play *no* role in any … judicial proceedings" because it unconstitutionally "inject[s] the civil courts into substantive ecclesiastical matters").  A state-approved standard of care for churches would be akin to a state stamp of approval on certain religious practices and disapproval of other religious practices—an establishment of state-approved (and disapproved) religious practices.  It would impose a state-defined and state-approved standard of care for purely religious

---

[1]  Plaintiffs may object that their claims are not for "clergy malpractice," but for interference with prospective economic advantage, breach of fiduciary duty, and negligence.  The label is not determinative.  Negligence claims against doctors and lawyers are still malpractice claims.  The issue is not clever pleading but the substance.  Here, the substance of Plaintiffs' claims are that a clergyman's alleged failure to comply with Church standards allegedly resulted in harm.  That is clergy malpractice. *See Franco*, 21 P.3d at 205 (treating plaintiff's claims for negligence, infliction of emotional distress, and breach of fiduciary duty as clergy malpractice claims); *Dausch*, 52 F.3d at 1438 (Ripple J., concurring in part and dissenting in part, joined by Coffey J., concurring) (stating that the district court correctly determined that the plaintiff's claim for breach of fiduciary duty was "simply an elliptical way of alleging clergy malpractice"); *Schmidt v. Bishop*, 779 F. Supp. 321, 327 (S.D.N.Y. 1991) ("[A]s with her negligence claim, [plaintiff's] fiduciary duty claim is merely another way of alleging that the [clergyman] grossly abused his pastoral role, that is, that he engaged in *malpractice*.").

7-    DEFENDANT'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

counseling, thereby denying churches the "'power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" *Hosanna-Tabor*, 132 S. Ct. at 704 (quoting *Presbyterian Church v. Hull Church*, 393 U.S. 440, 448 (1969)).

For these very reasons, numerous courts have rejected claims against clergy for alleged violations of a religious duty of confidentiality. For example, in *Hester v. Barnett*, 723 S.W.2d 544 (Mo. App. 1987), the plaintiffs sued their pastor for disclosing confidential communications. Rejecting the claim, the court explained that the pastor's duty of confidentiality was a *moral* duty imposed on him by the church's teachings, not a *legal* duty to be enforced in a court of law. "The tradition that a spiritual advisor does not divulge communications received in that capacity, moreover, even if a tenet of 'ministerial ethics' … describes a moral, not a legal duty. In the absence of a legal duty, a breach of a moral duty does not suffice to invest tort liability." *Id*. at 554. The plaintiffs pointed to the statutory clergy-penitent privilege, but the court rejected that argument: "While the statute no doubt means to encourage an effective relationship between the spiritual advisor and the communicant, the enactment has no effect beyond its actual terms." *Id*. Thus, the court held that the privilege did not apply beyond judicial proceedings and there is no "cause of action for the breach" of an evidentiary privilege. *Id*. The court also explained that the clergy-penitent privilege "was not known at the common law" and so there is no "tort principle of that system of law to validate a malpractice action for its breach." *Id*.; *see Scott v. Hammock*, 870 P.2d 947, 956 n. 5 (Utah 1994) (the "clergy privilege is merely a rule of evidence that protects certain communications from public disclosure during litigation; it does not define a cleric's ethical obligations within his or her own religion").[2]

---

[2] If Mr. Johnson's confession were privileged, he presumably could have asserted that privilege to preclude its use against him in his criminal proceedings. *See* Or. Rev. Stat. § 40.260(b)(2) ("A member of the clergy may not be examined as to any confidential communication made to the member of the clergy in the member's professional character *unless consent to the disclosure of the confidential communication is given by the person who*

8- DEFENDANT'S MOTION TO DISMISS

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Likewise, in *Lightman v. Flaum*, 761 N.E.2d 1027 (N.Y. 2001), the plaintiff sued two rabbis after they submitted affidavits in a divorce proceeding that revealed information the plaintiff had disclosed in confidence.  The plaintiff argued that the clergy-penitent privilege imposed a duty of confidentiality on the rabbis.  The court held "that statutory privileges are not themselves the sources of fiduciary duties but are merely reflections of the public policy of this State to proscribe the introduction into evidence of certain confidential information absent the permission of or waiver by a declarant."  *Id*. at 1031.  The court viewed the clergy-penitent privilege "in the manner intended by the Legislature—as a rule of evidence and not as the basis of a private cause of action." *Id*. at 1033.

The court then explained that, unlike therapists, doctors, attorneys, and other professionals—who are often licensed and regulated by the state—the state cannot constitutionally regulate religious counseling.  "[C]lerics are free to engage in religious activities without the State's permission, they are not subject to State-dictated educational prerequisites and, significantly, no comprehensive statutory scheme regulates clergy-congregant spiritual counseling relationship.  This explains plaintiff's inability to identify a source of defendants' alleged duty of confidentiality …."  *Id*. at 1032; *see Horosko v. Jones*, 2004 WL 2926665, *2 (Kan. Dec. 17, 2004) (announcing that "we agree with those courts which hold that a minister's duty of confidentiality is a moral, not a legal, obligation").

In sum, a plaintiff asserting a claim for breach of a duty of confidentiality "must identify" the "course and terms" of the duty of confidentiality.  *Humphers*, 696 P.2d at 535.  That means that, in most cases, the source of such a duty will be the "legal duties imposed as a condition of engaging in the professional practice of medicine or other occupations." *Id*. at 534.  Clergy are not subject to such legal duties, however.  Unsurprisingly, then, the only source that Plaintiffs

---

*made the communication*.") (emphasis added).  That he did not assert the privilege and pleaded guilty suggests there was corroborating evidence of his crime.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

point to in the Complaint is "Church doctrine" and "Church scripture." Compl. ¶¶ 17(b), 18.
Under the First Amendment, however, this Court cannot interpret or enforce duties imposed by
doctrine and scripture.  Such duties are moral and religious, not legal and secular.  All of
plaintiffs' claims turn on religious duties that cannot be adjudicated by a civil court, and thus all
their claims must be dismissed.

**D.**    **Plaintiffs' Complaint fails to plead any valid claims.**

Each of the three independent reasons discussed above require dismissal of Plaintiffs'
Complaint.  At the risk of overkill, we now proceed to show that the Complaint itself simply fails
to plead any viable claim for compelling reasons specific to each claim.

**1.**    **Plaintiffs fail to state a claim for intentional interference with prospective economic advantage.**

To succeed on a claim of intentional interference with prospective economic advantage,
the plaintiff must allege facts showing "(1) the existence of a professional or business
relationship; (2) intentional interference with the relationship; (3) by a third party;
(4) accomplished through improper means or for an improper purpose; (5) a causal effect
between the interference and damage to the economic relationships; and (6) damages."  *Nw. Nat.
Gas Co. v. Chase Gardens, Inc.*, 982 P.2d 1117, 1123-24 (Or. 1999).  The professional or
business relationship need not involve a formal contract,[3] but must be a "voluntary economic
relationship," as opposed to one created by statute or involuntarily.  *Westwood v. City of
Hermiston*, 787 F. Supp. 2d 1174, 1189 (D. Or. 2011); *see Travis v. City of Roseburg*, 2011 WL
2935561, at *6 (D. Or. July 15, 2011) (noting that the relationship between union and worker is
not a voluntarily-created economic relationship or expectancy for purposes of the intentional
interference tort).  This case involves a familial relationship, not an economic one.  As far as we

---

[3] *See Allen v. Hall*, 974 P.2d 199, 204 (Or. 1999) (recognizing interference with a prospective inheritance when there is a clear prospect of an inheritance).

10- DEFENDANT'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

can tell, no court has recognized a claim for interfering with prospective economic advantage for the disruption of a familial relationship.

Additionally, this is an intentional tort, and there is no allegation or evidence that the Church reported with the intent of interfering with *economic* relationships.  Nor would such an allegation be remotely plausible.  Further, such intentional interference is only tortious if it is done through "improper means."  Examples of "improper means" include "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood."  *Allen v. Hall*, 974 P.2d 199, 205 (Or. 1999).  Truthfully reporting the sexual abuse of a minor is not "improper means."

Furthermore, such interference is not actionable if the person "is promoting an interest which is equal or superior in social value to that with which he interferes."  *Bookstore, Inc. v. Leonard*, 2011 WL 1342995, at *13-14 (D. Or. Apr. 7, 2011); *see Keystone Metal Molding Co. v. R & W Metals Co.*, 486 F. Supp. 813, 815 (N.D. Ga. 1980) (dismissing a counterclaim of wrongful interference based on an allegation that the opposing party caused the FBI to investigate a competitor because the defendant did not allege lack of probable cause).  We are anxious to see any argument Plaintiffs might make to suggest that their interest in continued financial support from Mr. Johnson outweighs the interest in reporting that Mr. Johnson had sexually abused his daughter.

Finally, no court has, and no court ever should, accept the contention that a truthful report of a serious crime that results in a person's incarceration—as opposed to the commission of the crime itself—was the actionable cause of a loss of income.  Mr. Johnson is in prison because he sexually abused his daughter, not because he got caught due to the report.

## 2.    Plaintiffs fail to state a claim for breach of fiduciary duty.

Under Oregon law, a plaintiff claiming breach of fiduciary duty must prove: (1) the existence of a fiduciary relationship; (2) breach of one or more fiduciary duties arising out of that

11- DEFENDANT'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

relationship; and (3) damages resulting from the breach. *Giuliano v. Anchorage Advisors, LLC*, 19 F. Supp. 3d 1087, 1103 (D. Or. 2014). A fiduciary duty requires a "special relationship" in which one party has a duty to pursue the other party's best interests. *Id.* This exists when the nature of the parties' relationship allows one party to exercise control in the interests of the other, *id.*, or creates a special responsibility toward the other, *Jane Doe 130 v. Archdiocese of Portland in Oregon*, 717 F. Supp. 2d 1120, 1138-39 (D. Or. 2010).

There are serious constitutional concerns with claims against clergy for breach of a fiduciary duty. *See* Victor Schwartz & Christopher Appel, *The Church Autonomy Doctrine: Where Tort Law Should Step Aside*, 80 Univ. of Cinn. L. Rev. 430, 464 (2012). Many courts have held that such claims are barred by the First Amendment. *See Maffei v. Roman Catholic Archbishop of Boston*, 867 N.E.2d 300, 310 (Mass. 2007) (holding that the First Amendment "clearly forbid[s] [a court's] consideration of the religious obligations, if any, of a clergy member to his or her congregants, or of the 'trust and confidence' that may be engendered in congregants solely by virtue of the clergy's religious authority"); *Bladen v. First Presbyterian Church of Sallisaw*, 857 P.2d 789, 795-796 (Okla. 1993) ("in analyzing and defining the scope of a fiduciary duty owed persons by their clergy, the Court would be confronted by the same constitutional difficulties encountered in articulating the generalized standard of care for a clergyman required by the law of negligence"). Claims against churches and clergy for alleged breaches of a fiduciary duty are usually, as in this case, nothing more than constitutionally impermissible "clergy malpractice" claims. *See Langford v. Roman Catholic Diocese of Brooklyn*, 705 N.Y.S.2d 661 (2000) ("the gravamen of the cause of action labeled as one to recover damages for breach of fiduciary duty, was clearly that Sivillo was guilty of clergy malpractice …. [A]nd any breach of Sivillo's fiduciary duties can only be construed as clergy malpractice, since it would clearly require a determination concerning Sivillo's duties as a member of the clergy offering religious counseling to the plaintiff.").

12- DEFENDANT'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

In any case, the Court does not need to address these constitutional concerns because Plaintiffs' Complaint fails to plead any facts to establish a fiduciary relationship. Courts have repeatedly held that "the mere existence of a pastor-parishioner relationship does not in itself give rise to a fiduciary duty." *Gaines v. Krawczyk*, 354 F.Supp.2d 573, 584 (W.D. Pa. 2004); *see Lindeman v. The Corp. of the President of the Church of Jesus Christ of Latter-day Saints*, 43 F. Supp. 3d 1197, 1212 (D. Colo. 2014) ("In other words, attending church or its Sunday school does not create a fiduciary relationship between the church/school/teacher and the parishioner/student."); *Bouchard v. N.Y. Archdiocese*, 2006 WL 1375232, at *6 (S.D.N.Y. May 18, 2006) ("Plaintiff's allegations do not make out the existence of any sort of special relationship between the Church Defendants and Plaintiff beyond that general relationship between a church or religious body and a congregant. That general relationship is insufficient in law to support the finding of a fiduciary duty."). The bare allegation in the Complaint of the existence of a fiduciary duty is insufficient. *See Moss*, 572 F.3d at 969 (allegations that "do nothing more than state a legal conclusion" without supporting factual content should be disregarded). Therefore, this Court should dismiss Plaintiffs' breach of fiduciary duty claim.

**3.    Plaintiffs fail to plead a viable negligence claim.**

Plaintiffs' negligence claim is premised on the Church's alleged failure "to properly supervise" the clergyman who reported the abuse and failure "to properly train" him "with respect to his duties and obligations as a member of defendant's clergy." Compl. ¶¶ 29(a) and (b). Plaintiffs do not, however, plead any facts to establish that the Church did not properly train or supervise its clergy regarding their religious duties and obligations. The bare assertions in the Complaint, alone, are insufficient. *See Moss*, 572 F.3d at 969.

Further, such a claim is essentially for *church malpractice* as opposed to *clergy malpractice* and runs directly into the same constitutional roadblock. Several courts have held that the First Amendment prohibits claims against churches for negligent training and

13-  DEFENDANT'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

supervision of clergy.  "[S]tate inquiry into the training and supervision of clergy [is] prohibited by the First Amendment under most if not all circumstances." *Pritzlaff v. Archdiocese of Milwaukee*, 533 N.W.2d 780, 791 (Wis. 1995).  Such a claim would "require an inquiry into church laws, practices, and policies," which is precisely what the First Amendment prohibits. *Id.*; *see Dausch v. Rykse,* 52 F.3d 1425, 1429 (7th Cir.1994) (First Amendment barred parishioners negligent hiring and supervision and breach of fiduciary duty claims); *L.L.N. v. Clauder,* 563 N.W.2d 434, 445 (Wis. 1997) (First Amendment barred consideration of negligent supervision claim against diocese); *Swanson v. Roman Catholic Bishop of Portland*, 692 A.2d 441, 445 (Me. 1997) ("imposing a secular duty of supervision on the church and enforcing that duty through civil liability would restrict its freedom to interact with its clergy in the manner deemed proper by ecclesiastical authorities").

 We do not mean to suggest that a church could not be held liable for failing to properly supervise someone who had been previously accused of child sexual abuse.  But the First Amendment plainly prohibits judicial review of how a church trains and supervises its clergy in purely ecclesiastical matters, such as their duty of confidentiality under church doctrine and teachings.

 Additionally, Oregon law forecloses Plaintiffs' negligence claim because their allegations, at best, are sufficient only to show that they were "indirectly" injured by the Church's alleged negligence. The Oregon Supreme Court has held that "ordinarily negligence as a legal source of liability gives rise only to an obligation to compensate the person *immediately injured*, not anyone who predictably suffers loss in consequence of that injury, unless liability for that person's consequential loss has a legal source besides its foreseeability." *Norwest, By & Through Crain v. Presbyterian Intercommunity Hosp.*, 652 P.2d 318, 333 (Or. 1982) (emphasis added).  Thus, the Oregon Supreme Court has ruled that a minor child has no cause of action for the loss of a parent's services due to tortious injury to the parent.  *Id.*  Similarly, here,

14- DEFENDANT'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Mr. Johnson's family has no cause of action due to any alleged tortious injury (of which there is none) to Mr. Johnson himself.

## IV.    CONCLUSION

For the foregoing reasons, the Church respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety, with prejudice.

DATED:  February 7, 2020                    **PERKINS COIE LLP**

By: */s/ Nathan Morales*
    Stephen F. English, OSB No. 730843
    SEnglish@perkinscoie.com
    Cody M. Weston, OSB No. 984290
    CWeston@perkinscoie.com
    Nathan R. Morales, OSB No. 145763
    NMorales@perkinscoie.com
    1120 N.W. Couch Street, 10th Floor
    Portland, OR  97209-4128
    Telephone:  503.727.2000
    Facsimile:  503.727.2222

*Attorneys for Defendant*
Corporation of the President of The Church of Jesus Christ of Latter-day Saints

15-  DEFENDANT'S MOTION TO DISMISS

147109681.2

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222