**William D. Brandt, OSB No. 720366**
494 State Street, Suite 300 B
Salem, Oregon 97301
Phone: (503) 485-4168
Email: Bill@Brandtlawoffices.com
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **KRISTINE JOHNSON**, an individual; **JOHN DOE C.**; **JOHN DOE K.**; and **JOHN DOE S.**, | **Case No.** 6:20-cv-00190-MC |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| **CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS**, a Utah Corporation, | |
| Defendant. | |

## MEMORANDUM

Although at first glance it may appear otherwise, this case is not a challenge to the inner-workings of any particular church or religion. Plaintiff Kristine Johnson ("Johnson") does not seek damages for the "malpractice" of any member of a clergy, or allege that her husband's criminal conduct should have been "covered up" by the Church of Jesus Christ of Latter-Day Saints (the "Church").

Instead, when stripped of its religious garb, this case presents the simple question of whether the Church can be held liable for its bad-faith disclosure of Timothy Johnson's confession to the police, which it obtained under the misleading guise of confidentiality after representing to Johnson that any confessions of criminal conduct would be resolved through the Church's internal criminal process. At this early stage of the case, this question cannot be decided in the Church's favor.

### A.    Legal Standard.

A motion to dismiss under FRCP 12(b)(6) challenges the factual support for a particular cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). When presented with such a motion, the court assumes the truth of the plaintiff's allegations and determines whether they state a legally cognizable claim for relief. *See id.* at 678; *see also Franson v. Radich*, 84 Or. App. 715, 717 (1987) ("[W]e accept the facts pleaded in the complaint as true, and read the complaint liberally to uphold it if possible.").

The Court has described this analysis as a two-step process. The factual allegations in a complaint must first be separated from the legal conclusions (which are not entitled to the assumption of truth), and the court must then consider whether the factual allegations that remain can support a cause of action under any legal theory. *See Ashcroft,* 556 U.S. at 677. This is a liberal standard that disfavors dismissal. *See id.*

**B.      Factual Background.**

Plaintiff Kristine Johnson is the wife of Timothy Johnson, who was convicted of sexual abuse. *See* Complaint ¶ 16. Johnson and her husband are members of the "Stayton Ward" of the Salem, Oregon, "Stake" of the Church.  *See id.* ¶ 17. Sometime in 2016, Johnson's husband confessed to the Church clergy that he had sexually abused his minor daughter. *See id.* ¶ 18. Based on that confession, Brian Saari, who was a member of the Church's clergy, reported Timothy Johnson to the police. *See id.* ¶ 20.

Confessions are routinely made by the Church's members in the context of "confession sessions," and the Church provides "spiritual counseling" in response. *See id.* ¶ 11. To encourage full and candid confessions, a statutory privilege has been enacted in Oregon that protects clergy members from being compelled to disclose what they were told by a confessing member. *See* Or. Rev. Stat § 40.260(b)(2).

The "rules and scriptures" of the Church *require* members to "confess their sins" before "official church courts that convene" at the local level, and the written doctrine and historical practices of the Church direct clergy members "to keep confession-like communications confidential." *See* Complaint ¶¶ 14 – 16. No matter the severity or scope of a Church member's transgressions, the Church represents to its members that it will "spiritually counsel" and rehabilitate them through this process. *See id.* ¶ 17.

Church members are regularly assured throughout this process that their confessions will remain strictly confidential. *See id.* ¶¶ 17 – 19. Neither Timothy Johnson nor Johnson herself were ever warned by the Church that anything they said during a "confession session" could be communicated to the police at the Church's discretion. *See id.* ¶¶ 19 – 20. As a result of the Church's report, Johnson's husband was convicted and sentenced to multiple years in prison. *See id.* ¶ 20.

**C.      The complaint sufficiently alleges plausible bad faith.**

As an initial matter, the issue of whether the Church is immune from liability under any cause of action brought by any person as a consequence of reporting Timothy Johnson to the police can be resolved in the same manner as it was resolved in *Franson v. Radich*, 84 Or. App. 715, 735 P.2d 632 (1987).

In *Franson,* the plaintiffs had a baby with severe birth defects and made the decision to discontinue life preserving measures based on their doctor's representation that the baby would not survive. *See id.* at 717. After making that decision, a political group and its attorney filed an action for a mandatory injunction to keep the child alive. *See id.* The injunction was denied, and the plaintiffs then filed an action for custodial interference against the political group and its attorney. *See id.* at 718.

The defendants in *Franson* filed a motion to dismiss based on the same statute that the Church raises in this case, and argued that they were immune from liability because they made a good faith report of child abuse. *See id.* at 720. However, the Court of Appeals disagreed, and observed that the defendants' "good faith" did "not appear on the face of the complaint." *Id.* at 721. Therefore, the court held, the issue of "whether immunity does or does not exist" could not "be decided at the pleading stage." *Franson v. Radich*, 84 Or. App. 715, 721, 735 P.2d 632, 636 (1987).

Two points that are made clear in *Franson* are critical for the resolution of the Church's motion in this case. The first is that the immunity granted by ORS § 419B.025 has two conditions: the defendant must act in good faith *and* there must be reasonable grounds to make the report. *See* Or. Rev. Stat. § 419B.025. Second, the issue of immunity can be resolved at the pleading stage only if the defendant's "good faith" appears "on the face of the complaint." *Franson*, 84 Or. App. at 721.

Page 4 – **Plaintiffs' Response to Defendant's Motion to Dismiss**

1    In this case, Johnson's allegations are premised on the "bad faith" component of

2    ORS § 419B.025, which exists independently from the requirement that there be

3    "reasonable grounds" for making the report. *See* Or. Rev. Stat. § 419B.025. Additionally,

4    Johnson alleges that the Church lured her husband into confessing to the clergy based

5    on the false representation that his confession would be confidential, and then

6    immediately reported him to the police. *See* Complaint ¶¶ 16 – 20. A jury could

7    reasonably find that the Church acted in bad faith by making those false

8    representations. Therefore, dismissal is inappropriate because the Church's "good faith"

9    does "not appear on the face of the complaint." *Franson*, 84 Or. App. at 721.

10    **D.    Johnson does not allege the violation of "religious duties."**

11    As another preliminary matter, the Church misunderstands Johnson's allegations

12    and characterizes her claims as being based on a violation of "religious duties." This is

13    not accurate. Johnson's case can be made out independently from any purported

14    "religious duties," just like the plaintiff's case in *Franson*. *See, e.g., Franson v. Radich*,

15    84 Or. App. 715, 721, 735 P.2d 632, 636 (1987).

16    Even without considering whether any "religious duties" were violated, Johnson

17    alleges that the Church wrongfully lured her husband into confessing in the context of a

18    confidential "confession session," and then reported him to the police after he agreed.

19    *See* Complaint ¶¶ 16 – 20. This allegation can be made against any individual, and a jury

20    could find that it acted in bad-faith. *See Franson*, 84 Or. App. 715, 735 P.2d 632.

21    Therefore, the Church's argument that Johnson's claims are based on the

22    Church's alleged violations of a "religious duty" or "clergy malpractice" should be

23    rejected. Johnson asserts a claim that can be brought against any person or entity, and

24    not just a church or a member of its clergy. *Cf. id.*

Page 5 – **Plaintiffs' Response to Defendant's
Motion to Dismiss**

1    **E.    Johnson's allegations can support a legally cognizable cause of action.**

2          Although the defects that the Church points out in its motion may exist with

3    regard to the particular charges listed out in Johnson's complaint, they are generally

4    focused on the fact that she is not Timothy Johnson. However, Johnson does allege facts

5    sufficient to support a common law negligence claim based on the loss of consortium

6    she has suffered along with Mr. Johnson's family. *See Naber v. Thompson*, 274 Or. 309,

7    311, 546 P.2d 467, 468 (1976).

8          Johnson's allegations in paragraph twenty-four, for example, specifically refer to

9    "loss of consortium" as the basis for plaintiffs' damages:

10          Just, fair and reasonable compensation for loss of consortium, extreme
11          emotional distress as well as pecuniary loss to Plaintiffs Jane and John Does
12          in the amount of $1,000,000 each, for a total of $4,000,000, which
13          plaintiffs John and Jane Does reserves the right to amend this complaint to
14          reflect increases in income which Timothy Johnson would have reasonably
15          expected due to his successful career as a sculptor.
16
17    Complaint ¶ 24.

18          The substance of plaintiffs' allegations should govern the precise legal theory that

19    is being asserted in this case, rather than the particular labels and terms chosen to

20    describe those claims. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 755 (2017) ("[T]he

21    use (or non-use) of particular labels and terms is not what matters.").

22          To the extent that the Court agrees with defendant's argument that plaintiffs'

23    particular labels for its claims for relief are what govern and that the complaint is

24    defective for that reasons (with the exception of the negligence claim), plaintiffs

25    respectfully request leave to amend the complaint to better reflect the cause of action

26    that plaintiffs have standing to bring. *Cf. Naber v. Thompson*, 274 Or. 309, 311, 546

27    P.2d 467, 468 (1976) (recognizing common law right to recover for loss of consortium).

1                                    **CONCLUSION**

2          For the reasons stated above, the Court should deny defendant's motion to

3   dismiss. Alternatively, the Court should grant plaintiffs leave to amend their complaint

4   to better state the proper cause of action that plaintiffs have standing to bring.

5   Dated March 9, 2020.

6                                      */s/ William D. Brandt*

7                                      **William D. Brandt, OSB No. 720366**

8                                      494 State Street, Suite 300 B

9                                      Salem, Oregon 97301

10                                     Phone: (503) 485-4168

11                                     Email: Bill@Brandtlawoffices.com

12                                     Attorney for Plaintiffs